## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |
| Plaintiff, | ) Civil Action No.:_____ ) |
| v. | ) ) |
| MOSAIC FERTILIZER, LLC | ) **COMPLAINT** ) |
| Defendant. | ) ) ) |

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the United States Environmental Protection Agency (EPA), files this Complaint and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action against Mosaic Fertilizer, LLC, or Defendant to obtain assessment of civil penalties for violations of the federal emissions standards for hazardous air pollutants at Section 112 of the Clean Act Act (CAA), 42 U.S.C. § 7412, as implemented by the National Emission Standards for Hazardous Air Pollutants from Phosphoric Acid Manufacturing Plants and from Phosphate Fertilizers Production Plants at 40 C.F.R. Part 63, Subparts A, AA, and BB, 40 C.F.R. §§ 63.1-16, 63.600-611 and 63.620-632.

2. The violations alleged in this Complaint occurred at the following phosphoric acid manufacturing plants and phosphate fertilizers production plants owned and operated

by Defendant or its predecessor, at all times relevant to this action:

    a.    New Wales located at 3095 Highway 640 West, Mulberry, Florida 33860 in Polk County (New Wales facility);

    b.    Green Bay located at 4390 C.R. 640 West, Bartow, Florida 33830 in Polk County (Green Bay facility);

    c.    Bartow located at 3200 Highway 60 West, Bartow, Florida 33831 in Polk County (Bartow facility);

    d.    Riverview located at 8813 U.S. Highway 41 South, Riverview, Florida 33569 in Hillsborough County (Riverview facility); and,

    e.    South Pierce located at 7450 Highway 630, Mulberry, Florida 33860 in Polk County (South Pierce facility).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

5. Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e), for purposes of Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Air Act

6. The CAA is designed to protect and enhance the quality of the nation's air resources so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### National Emission Standards for Hazardous Air Pollutants (NESHAPs)

7. Congress established a list of hazardous air pollutants (HAPs) under the CAA. 42 U.S.C. § 7412(b)(1). Pursuant to CAA Section 112(b)(2), 42 U.S.C. § 7412(b)(2), EPA periodically reviews the list of HAPs and, where appropriate, revises the list by rule.

8. Section 112(c) of the CAA, 42 U.S.C. § 7412(c), requires that EPA publish a list of categories and subcategories of major sources and area sources of the HAPs listed under CAA Section 112(b), 42 U.S.C. § 7412(b).

9. Pursuant to CAA Section 112(a)(1), 42 U.S.C. § 7412(a)(1), and 40 C.F.R. § 63.2, a "major source" is a stationary source that emits or has the potential to emit more than 10 tons per year of any single HAP or more than 25 tons per year of any combination of HAPs. An "area source" is any stationary source of HAPs that is not a major source. CAA Section 112(a)(2); 42 U.S.C. § 7412(a)(2). A "stationary source" is any building, structure, facility, or installation that emits or may emit any air pollutant. CAA Section 112(a)(3); 42 U.S.C. § 7412(a)(3).

10. CAA Section 112(d), 42 U.S.C. § 7412(d), requires EPA to promulgate emission standards for major sources and area sources of HAPs. These standards,

3

compiled at 40 C.F.R. Part 63, are known as National Emission Standards for Hazardous Air Pollutants (NESHAPs) or maximum achieveable control technology (MACT) standards.

### NESHAPs for Phosphoric Acid Manufacturing Plants (Subpart AA)

11. The NESHAPs for phosphoric acid manufacturing plants were promulgated at 64 Fed. Reg. 31,358 (June 10, 1999), and are set forth at 40 C.F.R. Part 63, Subpart AA (Subpart AA), 40 C.F.R. §§ 63.600-63.611.

12. The requirements of Subpart AA apply to owners and operators of phosphoric acid manufacturing plants. 40 C.F.R. § 63.600(a).

13. Subpart AA applies to specified sources at phosphoric acid manufacturing plants. 40 C.F.R. § 63.600(b). These affected sources are wet-process phosphoric acid process line(s); evaporative cooling tower(s); phosphate rock dryer(s); phosphate rock calciner(s); superphosphoric acid process line(s); and, purified acid process line(s). 40 C.F.R. § 63.600(b).

14. Subpart AA contains notification and reporting requirements; fluoride and particulate matter emission limits; operating and monitoring requirements for wet scrubbing emission control systems; monitoring requirements for phosphorous-bearing feed materials; and, performance testing requirements to establish operating parameters and demonstrate compliance, among other things. 40 C.F.R. §§ 63.602-63.609.

15. Phosphoric acid manufacturing plants are also subject to the NESHAP General Provisions, set forth at 40 C.F.R. Part 63, Subpart A. 40 C.F.R. § 63.608.

16. The owner or operator of any existing affected source located at a phosphoric acid manufacturing plant was required to achieve compliance with the requirements of Subpart AA no later than June 10, 2002. 40 C.F.R. §§ 63.2, 63.600 and 63.609.

### NESHAPs for Phosphate Fertilizers Production Plants (Subpart BB)

17. The NESHAPs for phosphate fertilizers production plants were promulgated at 64 Fed. Reg. 31,358 (June 10, 1999), and are set forth at 40 C.F.R. Part 63, Subpart BB (Subpart BB), 40 C.F.R. §§ 63.620-63.632.

18. The requirements of Subpart BB apply to owners and operators of phosphate fertilizers production plants. 40 C.F.R. § 63.620(a).

19. Subpart BB applies to specified sources at phosphate fertilizers production plants. 40 C.F.R. § 63.600(b). These affected sources are: diammonium and/or monoammonium phosphate process line(s); granular triple superphosphate process line(s); and, granular triple superphosphate storage building(s). 40 C.F.R. § 63.600(b).

20. Subpart BB contains notification and reporting requirements; fluoride emission limits; operating and monitoring requirements for wet scrubbing emission control systems; monitoring requirements for phosphorous-bearing feed materials and stored materials; and, performance testing requirements to establish operating parameters and demonstrate compliance, among other things. 40 C.F.R. §§ 63.622-63.629.

21. The "owner or operator" of any existing affected source located at a phosphoric fertilizers production plant was required to achieve compliance with the requirements of Subpart BB no later than June 10, 2002. 40 C.F.R. §§ 63.2, 63.620(a)

5

and 63.630.

22. Phosphate fertilizers production plants are also subject to the NESHAP General Provisions, set forth at 40 C.F.R. Part 63, Subpart A. 40 C.F.R. § 63.628.

## CIVIL JUDICIAL ENFORCEMENT AUTHORITY

23. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for the assessment of civil penalties of up to $25,000 per day for each violation whenever any person violates any requirement of the CAA. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the United States may seek civil penalties of up to $27,500 per day for each violation occurring on or after January 21, 1997. Pursuant to EPA's 2004 and 2008 Civil Monetary Inflation Adjustment Rules, the United States may seek civil penalties of up to $32,500 per day for each violation occurring on or after March 16, 2004, and civil penalties of up to $37,500 per day for each violation occurring on or after January 13, 2009. 40 C.F.R. Part 19.

24. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action seeking a permanent or temporary injunction against any person violating any requirements of the CAA.

## DEFENDANT

25. Defendant is a Delaware corporation, headquartered in Florida, doing business in the Middle District of Florida.

26. Defendant is a person under Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## GENERAL ALLEGATIONS

27. Defendant was the owner and operator of the five facilities listed in paragraph 2, at all times relevant to this Complaint.

28. Plaintiff alleges that each facility listed in paragraph 2 is a major source of HAPs pursuant to CAA Section 112(a)(1), 42 U.S.C. § 7412(a)(1) and 40 C.F.R. § 63.2.

29. Plaintiff alleges that each facility listed in paragraph 2 is a phosphoric acid manufacturing plant. The requirements of 40 C.F.R. Part 63, Subparts A and AA were applicable to Defendant at each of these phosphoric acid manufacturing plants at all times subject to this Complaint.

30. Plaintiff alleges that each facility listed in paragraph 2 is a phosphate fertilizers production plant. The requirements of 40 C.F.R. Part 63, Subparts A and BB were applicable to Defendant at each of these phosphate fertilizers production plants at all times subject to this Complaint.

31. In mid-March 2006, inspectors from EPA Region 4 conducted full CAA compliance evaluations, including inspections, at the five facilities listed in paragraph 2.

32. As part of the evaluations, EPA requested information pursuant to Section 114 of the CAA, 42 U.S.C. § 7414.

33. EPA identified the violations alleged in this Complaint after reviewing: information obtained during the inspections; information obtained from the State of Florida through file reviews; and information provided in response to the Section 114 information request.

## FIRST CLAIM FOR RELIEF - ALL FIVE FACILITIES
### (Failure to Submit NOCSR under Subpart AA)

34. Plaintiff alleges that Defendant failed to submit the Notification of Compliance Status Report (NOCSR) for the New Wales facility under Subpart AA by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.607(a).

35. Plaintiff alleges that Defendant failed to submit the NOCSR for the Green Bay facility under Subpart AA by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.607(a).

36. Plaintiff alleges that Defendant failed to submit the NOCSR for the Bartow facility under Subpart AA by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.607(a).

37. Plaintiff alleges that Defendant failed to submit the NOCSR for the Riverview facility under Subpart AA by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.607(a).

38. Plaintiff alleges that Defendant failed to submit the NOCSR for the South Pierce facility under Subpart AA by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.607(a).

39. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring

on or after January 13, 2009.

## SECOND CLAIM FOR RELIEF - ALL FIVE FACILITIES
### (Failure to Submit NOCSR under Subpart BB)

40. Plaintiff alleges that Defendant failed to submit the NOCSR for the New Wales facility under Subpart BB by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.627(a).

41. Plaintiff alleges that Defendant failed to submit the NOCSR for the Green Bay facility under Subpart BB by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.627(a).

42. Plaintiff alleges that Defendant failed to submit the NOCSR for the Bartow facility under Subpart BB by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.627(a).

43. Plaintiff alleges that Defendant failed to submit the NOCSR for the Riverview facility under Subpart BB by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.627(a).

44. Plaintiff alleges that Defendant failed to submit the NOCSR for the South Pierce facility under Subpart BB by August 9, 2002, in violation of 40 C.F.R. §§ 63.9(h)(2)(i) and 63.627(a).

45. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation

occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### THIRD CLAIM FOR RELIEF - ALL FIVE FACILITIES
(Failure to establish operating parameters and to operate within such parameters under Subpart AA)

46. For the New Wales facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges and to operate within such ranges, for each scrubber in the process scrubbing system for the scrubbers at the Phosphoric Acid Plant East, Phosphoric Acid Plant West, and Phosphoric Acid Plant No. 3 (one scrubber each) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(d) and 63.609.

47. For the Green Bay facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges and to operate within such ranges, for each scrubber in the process scrubbing system associated with the Phosphoric Acid Plant No. 1 North Train, Phosphoric Acid Plant No. 1 South Train, and Phosphoric Acid Plant No. 2 (one scrubber each) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(d) and 63.609.

48. For the Bartow facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges for each scrubber and to operate within such ranges, in the process scrubbing system associated with the Phosphoric Acid Plant No. 4 and No. 5 Trains (three scrubbers total) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(d) and 63.609.

49. For the Riverview facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges for each scrubber and to operate within such

ranges, associated with the Phosphoric Acid Production Facility (four scrubbers) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(d) and 63.609.

50. For the South Pierce facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges for each scrubber and to operate within such ranges, in the process scrubbing system associated with the Phosphoric Acid Plant A and B Trains (one scrubber each) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(d) and 63.609.

51. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### FOURTH CLAIM FOR RELIEF - ALL FIVE FACILITIES
(Failure to establish operating parameters and to
operate within such parameters under Subpart BB)

52. For the New Wales facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges and to operate within such ranges for each scrubber in the process scrubbing system, at the diammonium phosphate (DAP) Plant No. 1 (three scrubbers), DAP Plant No. 2 East (three scrubbers), DAP Plant No.2 West (two scrubbers), monoammonium phosphate (MAP) Prill Plant (one scrubber), and the GMAP Plant (three scrubbers) by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(f) and 63.630.

53. For the Green Bay facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges and to operate within such ranges for each scrubber in the process scrubbing system, at the South AP Fertilizer Plant (five scrubbers) and the North MAP/DAP Fertilizer Plant (sevens scrubbers) by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(f) and 63.630.

54. For the Bartow facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges for each scrubber in the process scrubbing system, at the No. 3 (six scrubbers) and No. 4 (five scrubbers) Fertilizer Plants by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(f) and 63.630.

55. For the Riverview facility, Defendant failed to establish the allowable operating parameter ranges for each scrubber in the process scrubbing system, for the No. 5 DAP Process Plant (five scrubbers) and the No. 6 AP Manufacturing Process Plant (seven scrubbers) by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(f) and 63.630.

56. For the South Pierce facility, Plaintiff alleges that Defendant failed to establish the allowable operating parameter ranges for each scrubber in the process scrubbing system, for the granular triple superphosphate (GTSP) Production Plant (three scrubbers) and the GTSP East Storage Building (two scrubbers) by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(f) and 63.630.

57. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation

occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### FIFTH CLAIM FOR RELIEF –
### NEW WALES, AND GREEN BAY FACILITIES
### (Failure to install, calibrate, maintain, and
### operate monitoring systems under Subpart AA)

58. For the New Wales facility, Plaintiff alleges that Defendant failed to install, calibrate, maintain, and operate a monitoring system to continuously monitor the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid for the Phosphoric Acid Plant No. 3 (one scrubber) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(c) and 63.609.

58. For the Green Bay facility, Plaintiff alleges that Defendant failed to install, calibrate, maintain, and operate a monitoring system to continuously monitor the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid for the Phosphoric Acid Plant No. 1 North Train, Phosphoric Acid Plant No. 1 South Train, and Phosphoric Acid Plant No. 2 (one scrubber each) by June 10, 2002, in violation of 40 C.F.R. §§ 63.605(c) and 63.609.

60. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

**SIXTH CLAIM FOR RELIEF –
NEW WALES, GREEN BAY AND SOUTH PIERCE FACILITIES
(Failure to install, calibrate, maintain, and
operate monitoring systems under Subpart BB)**

61. For the New Wales facility, Plaintiff alleges that Defendant failed to install, calibrate, maintain, and operate a monitoring system to continuously monitor daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid for the granulated monoammonium phosphate (GMAP) Plant (main Venturi scrubber), by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(c) and 63.630.

62. For the Green Bay facility, Plaintiff alleges that Defendant failed to install, calibrate, maintain, and operate a monitoring system to continuously monitor daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid for the South AP Fertilizer Plant (five scrubbers) and the North MAP/DAP Fertilizer Plant (seven scrubbers), by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(c) and 63.630.

63. For the South Pierce facility, Plaintiff alleges that Defendant failed to install, calibrate, maintain, and operate monitors to continuously monitor the pressure drop and flow rate for the two scrubbing systems associated with the GTSP Production Plant and the GTSP East Storage Building by June 10, 2002, in violation of 40 C.F.R. §§ 63.625(c) and 63.630.

64. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation

14

occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### SEVENTH CLAIM FOR RELIEF--
### NEW WALES AND RIVERVIEW FACILITIES
**(Failure to maintain daily pressure drops and flowrates under Subpart AA)**

65. For the New Wales facility, Plaintiff alleges that Defendant failed to maintain the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid of each scrubber, within the allowable ranges established pursuant to the requirements of 40 C.F.R. § 63.605(d), at the Phosphoric Acid Plant East, Phosphoric Acid Plant West, and Phosphoric Acid Plant No. 3 (one scrubber each), in violation of 40 C.F.R. § 63.604, during various months in 2004-2006.

66. For the Riverview facility, Plaintiff alleges that Defendant failed to maintain the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid of each scrubber, within the allowable ranges established pursuant to the requirements of 40 C.F.R. § 63.605(d), at the Phosphoric Acid Production Facility (three scrubbers), in violation of 40 C.F.R. § 63.604, on specific dates.

67. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

## EIGHTH CLAIM FOR RELIEF
## NEW WALES AND RIVERVIEW FACILITIES
### (Failure to maintain daily pressure drops and flowrates under Subpart BB)

68. For the New Wales facility, Plaintiff alleges that Defendant failed to maintain the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid of each scrubber, within the allowable ranges established pursuant to the requirements of 40 C.F.R. § 63.625(f), at the DAP Plants No. 1, No. 2 (East), No. 2 (West), MAP Prill Plant, the GMAP Plant, the Multifos A, B, and C Kilns, and the Multifos Mixed Feed Equipment, in violation of 40 C.F.R. § 63.624, during various months in 2005.

69. For the Riverview facility, Plaintiff alleges that Defendant failed to maintain the daily average pressure drop across each scrubber and the flow rate of the scrubbing liquid of each scrubber within the allowable ranges, established pursuant to the requirements of 40 C.F.R. § 63.625(f), at the No. 5 DAP Process Plant (five scrubbers) and No. 6 AP Manufacturing Process Plant (seven scrubbers), in violation of 40 C.F.R. § 63.624, on specific dates.

70. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### NINTH CLAIM FOR RELIEF
### SOUTH PIERCE FACILITY
**Performance test violations - Subpart BB**

71. For the South Pierce facility, Plaintiff alleges that Defendant failed to demonstrate compliance via a performance test on or before June 10, 2002, for the GTSP East Storage Building in violation of 40 C.F.R. §§ 63.626(a)(1) and 63.630.

72. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

### TENTH CLAIM FOR RELIEF
### SOUTH PIERCE FACILITY
**Emission limit violations - Subpart BB**

73. For the South Pierce facility, Plaintiff alleges that Defendant failed to demonstrate compliance with the emission standard for total fluorides at the GTSP East Storage Building by June 10, 2002, in violation of 40 C.F.R. §§ 63.622(c)(1) and 63.630.

74. Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as set forth above, these violations subject Defendant to civil penalties of up to $27,500 per day for each violation occurring before March 16, 2004, $32,500 per day for each violation occurring on or after March 16, 2004, and $37,500 per day for each violation occurring on or after January 13, 2009.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court enter a judgment against the Defendant: (1) ordering that Defendant pay civil penalties, pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b); (2) awarding the United States its costs and fees in this action; and (3) granting such other and further relief as may be just and proper and as the public interest and the equities of the case may require.

RESPECTFULLY SUBMITTED ON BEHALF OF THE UNITED STATES,

ROBERT E. O'NEILL
United States Attorney

LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 714623
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
(813) 274-6000
randy.harwell@usdoj.gov

Date: 1-8-13

ROBERT MAHER
Acting Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division

NATHANIEL DOUGLAS
Acting Assistant Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4628
nathaniel.douglas@usdoj.gov

_____
VALERIE A. NOWELL
Trial Attorney by Special Appointment
United States Department of Justice
c/o Environmental ProtectionAgency,
Region 4
Georgia Bar No. 321615
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
(404) 562-9555
nowell.valerie@epa.gov

Date: 1/7/13

19